UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


MELISSA CHOPKA,          )     Case No. 5:18CV945
                             )
             Plaintiff,     )     MAGISTRATE JUDGE
                             )     GEORGE J. LIMBERT
    v.                       )
                             )
ANDREW M. SAUL[1],       )     <u>MEMORANDUM OPINION</u>
COMMISSIONER OF         )     <u>AND ORDER</u>
SOCIAL SECURITY,        )
                             )
            Defendant.    )


      Melissa Chopka ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her merits brief, filed on August 27, 2018, Plaintiff asserts that the Administrative Law Judge ("ALJ") lacked substantial evidence to support his decision because (1) the evidence documents medical findings demonstrating that Plaintiff meets the requirements of Listing 1.04B at step three; and (2) he failed to fully and fairly evaluate Plaintiff's complaints of pain in his determination of Plaintiff's residual functional capacity ("RFC"). ECF Dkt. #13. On October 25, 2018, Defendant filed a brief on the merits. ECF Dkt. #15.

      For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

## I.    FACTUAL AND PROCEDURAL HISTORY

      Plaintiff filed an application for DIB on March 2, 2015 alleging disability beginning November

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

4, 2002 due to anxiety, depression, sleep apnea, siatica, nerve damage, drop foot, spondiolosis, degenerative disc disease ("DDD"), chronic pain, neropathy, and numbness in legs and stabbing pain. ECF Dkt. #9[2] at 94, 106-07, 119, 201. The Social Security Administration ("SSA") denied Plaintiff's application initially and upon reconsideration. *Id.* at 94-119. Plaintiff requested a hearing before an ALJ which was held on July 26, 2017. *Id.* at 72, 125, 133, 173. At the hearing, Plaintiff was represented by counsel and testified, and a vocational expert ("VE") testified as well. *Id.* at 72.

On August 25, 2017, the ALJ issued a decision denying Plaintiff's application for DIB. Tr. at 9-24. Plaintiff requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied her request for review on March 27, 2018. *Id.* at 1-6. On April 25, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a merits brief on August 27, 2018, and Defendant subsequently filed a merits brief on October 25, 2018. ECF Dkt. #13; ECF Dkt. #15.

## II.     RELEVANT PORTIONS OF THE ALJ'S DECISION

On August 25, 2017, the ALJ issued a decision finding that Plaintiff last met the insured status requirements of the Social Security Act ("SSA") on December 31, 2007. Tr. at 14. He found that Plaintiff had not engaged in substantial gainful activity since November 4, 2002, the alleged onset date. *Id.* He further found that through the date last insured, Plaintiff had the severe impairments of: DDD and obesity. *Id.* The ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

---

[2]     All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 16. After considering the record, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform sedentary work with the following limitations: can climb ramps and stairs occasionally but never climb ladders, ropes, and scaffolds; could never balance, kneel or crawl but she can occasionally stoop and crouch; can never work at unprotected heights or near moving mechanical parts. *Id.*

Through the date last insured and based upon Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. Tr. at 22-23. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the SSA, and she was not entitled to DIB from November 4, 2002 through December 31, 2007, the date that she was last insured. *Id.* at 24.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age,

education, past work experience and residual functional capacity must be
considered to determine if other work can be performed (20 C.F.R. §§
404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with

the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v.*

*Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes

a determination of disability. This Court's review of such a determination is limited in scope by § 205

of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's

scope of review is limited to determining whether substantial evidence supports the findings of the

Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*,

905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings

if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of

evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).

Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be

affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have

found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which

[an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th

Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of

substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     LAW AND ANALYSIS

### A.     Step 3 and Listing 1.04B

Plaintiff first asserts that substantial evidence does not support the ALJ's Step Three finding that her spine disorder did not meet Listing 1.04B. ECF Dkt. #13 at 11-14. For the following reasons, the Court finds that the ALJ's Step Three analysis is sufficient and substantial evidence exists to support the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 1.04B.

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. In the third step of the analysis to determine a claimant's entitlement to social security benefits, it is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See* 20 C.F.R. § 416.920(a)(iii); *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairments meet all of the requirements for a listed impairment. 20 C.F.R. § 404.1525(c)(3); *e.g.*, *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). An impairment that meets

only some of the medical criteria and not all does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 1.04B sets forth the criteria for spinal arachnoiditis. It provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

Listing 1.04B, 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Part A1).

The ALJ's Step Three analysis as to whether Plaintiff's impairments met or medically equaled Listing 1.04B is as follows:

> Under the listing of impairments in Appendix 1, Subpart P, Regulations Part 404, there are no indicated findings by treating or examining physicians that satisfy the requirements of any listed impairment. All of the listings were considered in reaching this finding, with specific emphasis on listings 1.04. While the claimant has established limitations associated with degenerative disc disease of the lumbar spine, the evidence does not support listing level severity resulting in atrophy with muscle weakness and sensory or reflex loss, spinal arachnoiditis confirmed by an operative note or pathology report, or medically acceptable imaging with severe burning, or painful dysesthesia, or an inability to ambulate effectively through the date last insured. Although during the course of treatment, the claimant's surgeon noted that there appeared to have "some clumping of the nerve roots at the L5-1 level on CT scan, suggestive of arachnoiditis," he indicated that there was no ongoing compression of the thecal sac and concluded that she had failed back syndrome (Ex. 5F, 79)[Tr. at 584]. Moreover, there were no neurological problems inherent to arachdoiditis noted. Therefore, the undersigned does not find that the claimant has an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Tr. at 16. The ALJ found that the Plaintiff had established limitations associated with DDD, but that the severity of her impairment did not meet any of Listing 1.04B's requirements. *Id.*

The Sixth Circuit regards Listing 1.04B as having "strict requirements" and that it "requires that a spinal arachnoiditis condition be confirmed by an operative note or tissue biopsy." *Lawson v. Comm'r of Soc. Sec.*, 192 Fed.Appx. 521, 529-30 (6th Cir. 2006). Further, the Northern District of Ohio in *Martin* broke Listing 1.04B into 3 elements, stating that the claimant "was required to demonstrate (1) compromise of a nerve root or spinal cord; (2) spinal arachnoiditis confirmed by acceptable imaging; and (3) a manifestation of severe burning or painful dysesthesia resulting in the need for changes in position or posture more than once every 2 hours." *Martin v. Comm'r of Soc. Sec.*, No. 3:18CV00005, 2018 WL 6169282, at *10 (N.D. Ohio Nov. 26, 2018).

The ALJ's analysis regarding the first element is unclear. In the instant case, he stated that claimant established limitations associated with DDD, but it was not severe enough to meet the Listings. Tr. at 16. The ALJ then stated that the second and third requirements were not met. *Id.*

Plaintiff contends that the record documents that the third element is met because Plaintiff had severe burning or painful dysesthesia, which required her to change position more than once every two hours. ECF Dkt. #13 at 13-14. Defendant did not address this issue directly in his merits brief. *See* ECF Dkt. #15 at 12-13. "Generally, when a symptom [such as pain] is one of the criteria in a listing, it is only necessary that the symptom be present in combination with the other criteria. 20 C.F.R. § 404.1529(d)(2).

For support, Plaintiff points to two functional capacity evaluations and several doctors' visits from 2005 to 2008. ECF Dkt. #13 at 13-14. The first functional capacity evaluation was from physical therapist, Mark Crawford, in March 2006, which noted that Plaintiff would be appropriate for a sedentary level job with accommodation to allow her frequent position changing. Tr. at 19, 850. The second evaluation was from physical therapist Bonnie Allen-Fadzl, in April 2007, which noted that

Plaintiff functioned in the sedentary physical demand category but could not tolerate even two hours in a work environment. *Id.* at 352. In his decision, the ALJ addressed the first, but not the second, report. *See id.* at 19-20. The ALJ even afforded "great weight" to the therapist's evaluation "showing the claimant could perform activities within a sedentary range of exertion." *Id.* at 22. The ALJ also addressed nearly all of the doctor's visits mentioned by Plaintiff in addition to visits not mentioned by Plaintiff. *See id.* at 17-22. The ALJ further stated that he "considered the claimant's surgery and persistent complaints of back pain imposing limitations walking and standing for periods greater than two hours in an 8-hour workday." *Id.* at 17. Although there is some evidence to support Plaintiff's contentions that she suffered from severe burning or painful dysesthesia that requires her to change position more than once every two hours, there is also evidence to the contrary, which the ALJ found more persuasive in formulating his RFC. *See id.* at 22. Further discussion of these functional capacity evaluations are in the following subsection of this memorandum opinion.

In his decision, the ALJ concluded that "the evidence does not support listing level severity resulting in . . . medically acceptable imaging with severe burning, or painful dysesthesia, or an inability to ambulate effectively through the date last insured." Tr. at 16. Although the ALJ did not cite specific support at step three of his decision, he discussed her medical history in depth in his RFC determination. *See id.* at 16-21; *see generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination). He noted her multiple surgeries and the notes from her doctors visits. *Id.* Regarding the relevant symptoms mentioned above, the ALJ noted that in August 2003, Dr. Dhillon noted that

Plaintiff "could hardly walk due to extreme pain and stiffness." *Id.* at 18. One month later, Dr. Taliwal examined Plaintiff and noted that "she walked with a slight limp." *Id.* He further noted Plaintiff's complaints of pain in her lower back and lower extremities and that she had a positive straight leg raise with bileratal foot drop and diminished knee and ankle reflex. *Id.* Starting in 2005, the ALJ noted several visits in which Plaintiff's doctors saw improvement in her condition, that she walked without assistance, walked with a normal gait, had negative straight leg raises, and strength in her legs was a 5/5. *Id.* at 19-21. The ALJ also even acknowledged that the Plaintiff "struggled at times with pain." *Id.* at 17. Therefore, since the symptom of pain is present and acknowledged, the Listing 1.04B requirement of "severe burning or painful dysesthia" is met. 20 C.F.R. § 404.1529(d)(2).

Plaintiff's next contention is regarding the second element of the Listing: that the record contains evidence of spinal arachnoiditis, confirmed by appropriate medically acceptable imaging. ECF Dkt. #13 at 12-13. Listing 1.04B requires a diagnosis of spinal arachnoiditis, not simply evidence thereof, to be confirmed by appropriate medically acceptable imaging. Listing 1.04B, 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Part A1). Although Plaintiff cited to several surgeries and MRI scans that are suggestive of spinal arachnoiditis, none can actually confirm the existence thereof. *See* ECF Dkt. #13 at 12-13; ECF Dkt. #15 at 13. Both parties point to a medical note by Dr. Taliwal on October 15, 2007, in which Dr. Taliwal noted that "[t]here appears to be some clumping of the nerve roots at the 5-1 level, suggestive of arachnoiditis but there is no ongoing compression of the thecal sac." Tr. at 584. However, in this same record, Dr. Taliwal did not diagnose spinal arachnoiditis, but rather noted failed back syndrome as his official impression. *Id.* The ALJ addressed this record in his decision as well. *Id.* at 16. This District, in *Martin*, made a substantially similar analysis:

> Martin points to no evidence he has been diagnosed with spinal arachnoiditis, the
> threshold requirement of Listing 1.04B. Instead, Martin notes the operative report from

his November 2015 lumbar surgery, which documented evidence of nerve root compression, scar tissue, and "some arachnoid twitching to the scar tissue." However, Dr. Voorhies, the operating surgeon, did not diagnose spinal arachnoiditis. Rather, Martin's post operative diagnosis was lumbar foraminal stenosis at L3-4, L4-5, and L5-S1 with radiculopathy. Under the Listing, documentation of a spinal arachnoiditis diagnosis, by either operative note or biopsy, is required. Dr. Voorhies' notation of arachnoid twitching around some scar tissue does not constitute a diagnosis of spinal arachnoiditis and no other physician has offered such a diagnosis.

*Martin v. Comm'r of Soc. Sec.*, No. 3:18CV00005, 2018 WL 6169282, at *11 (N.D. Ohio Nov. 26, 2018) (internal citations omitted).

Even though the Listing requirement of severe burning or painful dysesthesia was met, there is no record that confirms that Plaintiff had spinal arachnoiditis, as Listing 1.04B requires. Pursuant to the substantial-evidence standard, the Court finds that the ALJ's decision was supported by substantial evidence.

### B.    Subjective Symptoms and RFC

Plaintiff further asserts that the ALJ lacks substantial evidence for his RFC determination because he failed to fully and fairly evaluate her complaints of disabling pain and articulate his reasons for discounting her testimony regarding her subjective symptoms and limitations as required by SSR 16-3p. ECF Dkt. #13 at 14. For the following reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's subjective symptoms and limitations and in determining her RFC. Further, the Court finds that the ALJ adequately considered and addressed Plaintiff's subjective symptoms and substantial evidence supports his decision to discount her symptoms and to support his RFC determination. This Court further finds that any error is harmless.

A claimant's RFC is an assessment of the most that a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R.

§ 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 404.1545(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on all of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id.* A reviewing court will generally defer to credibility assessments made by an ALJ when it is supported by adequate basis. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529, SSR 16-3p[3]. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th

---

[3] SSR 16-3p superseded SSR 96-7p effective March 28, 2016.

Cir.1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir.1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. SSR 16-3p; *Felisky*, 35 F.3d at 1039–40.

In his decision in the instant case, the ALJ limited Plaintiff to sedentary work with the following additional restrictions: can climb ramps and stairs occasionally but never climb ladders, ropes, and scaffolds; could never balance, kneel or crawl but she can occasionally stoop and crouch; can never work at unprotected heights or near moving mechanical parts. Tr. at 16. The ALJ thereafter cited to the correct regulation in stating that he had considered all of Plaintiff's symptoms and the

extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence according to 20 C.F.R. § 404.1529 and SSR 96-4p. *Id.* He indicated that he had considered the opinion evidence in the record in accordance with 20 C.F.R. § 404.1527 and he further cited to the two-step process set forth in SSR 16-3p for evaluating Plaintiff's symptoms. *Id.* The ALJ discussed Plaintiff's testimony in depth, but found that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *See* tr. at 17.

Plaintiff asserts that there is objective evidence in the record to support Plaintiff's complaints of pain. ECF Dkt. #13 at 15. For support, she cites to MRIs done in January 2003, August 2003, and July 2006; a lumbar myelogram in October 2007; an EMG study in March 2008; a microdiscestomy of the L5-S1 disc in April 2003; a lumbar revision decompression with fusion in July 2005 and subsequent staph infection; an anterior discectomy and fusion in August 2006; her complaints of pain to Dr. Taliwal in 2007; her October 29, 2007 visit to Dr. Shah for pain management; her own testimony at the hearing; and two independent functional capacity evaluations. *Id.* at 15-17. In the ALJ's review of the medical evidence, he cited to and discussed each of the aforementioned records, except for the July 2006 MRI and the March 2008 EMG study. *See* tr. at 17-21. In addition, the ALJ also cited and discussed Dr. Dhillon's evaluations and findings on July 3, 2003 and August 7, 2003; Dr. Taliwal's evaluations, findings, and treatments on September 15, 2003, September 19, 2005, June 14, 2006, February 5, 2007, August 6, 2007, and October 15, 2007; findings of a January 2004 CT scan of the lumbosacral spine; notes from Dr. Dhillon regarding her condition and surgery approval from September 2, 2004 to March 23, 2005; Dr. Taliwal's examination and findings after an X-ray and MRI in May 2005; her post-surgical condition from July to August 2005; Dr. Amdur's examination notes from January 26, 2006; Dr. Taliwal's August 28, 2006 notes about her post-surgery condition; observations and evaluation notes from Dr. Hernandez on November 16, 2006, December

14, 2006, May 3, 2007, July 12, 2007, October 18, 2007, and January 28, 2008; notes from physical therapy around February 2, 2007; and Plaintiff's symptoms and medications during a December 13, 2007 visit. *Id.* at 17-21. Although some of the records discussed by the ALJ tend to support Plaintiff's credibility, other records tend to detract from her credibility. For example, after Plaintiff's July 2005 surgery, examination findings consistently indicated her strength remained 5/5 and she had negative straight leg raises. *See* tr. at 19-21 (citing Tr. at 577, 581, 584, 593, 596, 613, 752, 764, 777, 804, 896). The Court finds that the ALJ adequately evaluated the evidence, and there is substantial evidence to support his determination.

Furthermore, Plaintiff contends that despite giving the first functional capacity evaluation from March 2006 great weight, he failed to consider Plaintiff's need for frequent position changes. ECF Dkt. #13 at 17 (citing 20 C.F.R. § 404.1529); *see* tr. at 19, 22. Plaintiff also contends that the ALJ did not consider results of second functional capacity evaluation from April 2007.

The first evaluation from March 3, 2006 was from physical therapist Marc Crawford. Tr. at 19, 354-56. The ALJ discussed this evaluation in his decision and specifically reviewed Mr. Crawford's notes that: (1) Plaintiff demonstrated the ability to perform full time work activities within the sedentary physical demand level on a safe and dependable basis; (2) Plaintiff would be appropriate for a sedentary level job allowing frequent position changes; and (3) Plaintiff would benefit from a work-conditioning program to increase her physical demand level tolerance. *Id.* at 19 (citing Tr. at 856). The ALJ further found that this assessment supported sedentary work and sustainability. *Id.* at 19. Ultimately, the ALJ gave "great weight" to this evaluation, which showed that Plaintiff could perform activities within a sedentary range of exertion, and, for support, the ALJ reasoned that Mr. Crawford performed the evaluation and observed the Plaintiff's functioning. *Id.* at 22.

Plaintiff contends that despite the great weight given to Mr. Crawford's opinion, "the ALJ failed to consider [Plaintiff's] need for frequent position changes" because it is not reflected in the

RFC finding. ECF Dkt. #13 at 17. However, the ALJ did "consider" the report's note regarding frequent position changes because the ALJ expressly mentioned it in his decision. *See* tr. at 19 (citing Tr. at 856). When making a RFC finding, an ALJ is required to consider the limiting effects of *all* of a claimant's medically determinable impairments and it must be based on *all* of the relevant evidence in the case record. *See* 20 C.F.R. § 404.1545(a) & (e); SSR 96-8p, at *5. As already discussed, the ALJ cited extensively to the medical records, including those with notes and findings about Plaintiff's ability to ambulate during the relevant time period. *See* tr. at 17-21. Although the ALJ's RFC finding does not expressly limit Plaintiff to needing frequent position changes, the RFC does include other additional limitations to sedentary work. *Id.* at 16.

Moreover, the RFC finding is still consistent with Mr. Crawford's evaluation because both limited Plaintiff to sedentary work. *See* tr. at 16, 854-56. Moreover, RFC "is not the least an individual can do, but the most, based on all of the information in the case record." *Id.* at *2. The regulations define sedentary work as involving not only sitting, but also "a certain amount of walking and standing [that] is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). It also states that jobs are considered sedentary "if walking and standing are required occasionally and other sedentary criteria are met." *Id.* By definition, sedentary work may necessarily involve occasional position changing. The regulations do not define "occasionally" and neither does Mr. Crawford explain exactly how frequently Plaintiff would need to change her position. Therefore, the Court finds that the ALJ's RFC finding is overall consistent with the March 2006 evaluation, and it also at least encompasses some aspects of the recommended position changing note.

Additionally, as Defendant noted in his merits brief, the therapist did not provide many details regarding his conclusion that Plaintiff would need an accommodation allowing for frequent position changes. ECF Dkt. #15 at 18. An ALJ is "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246

F.3d 762, 773 (6th Cir. 2001) (international citation omitted). This rule also applies to other non-treating physicians, including, for instance, a physical therapist. *See* 20 C.F.R. § 404.1527(c)(3)-(4) & (f) (supportability and consistency are some factors to consider for opinions from unacceptable medical sources). Also, SSA policy states that "[a]n RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9p. Thus, although the ALJ afforded great weight to the March 2006 evaluation, he was not required to accept every unsupported conclusion of Mr. Crawford or include every opined limitation in his own RFC determination.

The second evaluation from April 3, 2007 was from physical therapist Bonnie Allen-Fadzl. Tr. at 351-63. The evaluation states in relevant part:

> Based on the results of this FCE, Ms. Chopka does demonstrate the ability to perform some work-related activities. However, her continued pain complaints and significantly decreased sitting and standing tolerances are problematic. It is not likely that she would tolerate even 2 hours in a work environment. As a result, no recommendations with regard to work allowances are made at this time.

> Ms. Chopka reported that authorization for additional physical therapy visits has been requested and that she is to enter into a Work Conditioning program. Given her current status, this is an appropriate plan. Specific return to work recommendations can be made by her treating therapist at the end of her rehab program.

Tr. at 352. The Plaintiff correctly notes that the ALJ did not mention this evaluation in his decision. For support, Plaintiff points to 20 C.F.R. § 404.1529, which only requires that an ALJ "consider all of the available evidence" when evaluating the intensity and persistence of a claimant's symptoms, including pain. 20 C.F.R. § 404.1529(a). However, this particular regulation does not impose a requirement that the ALJ expressly discuss an evaluation from a physical therapist. In fact, an ALJ generally need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.

App'x 661, 665 (6th Cir. 2004). The ALJ stated that he gave great deference to State agency medical consultants, Teresita Cruz, M.D. and William Bolz, M.D. Tr. at 22. In each of their assessments, the State agency consultants considered Ms. Allen-Fadzl's April 2007 opinion and noted that there was no support for limiting work day to 2 hours. *Id.* at 101, 109, 113. Given that the ALJ relied heavily on these State consultant opinions, the Court finds that the ALJ did consider the April 2007 assessment.

The regulations also require an ALJ to "evaluate" every medical opinion. 20 C.F.R. 404.1527(f). Opinions from physical therapists are considered non-acceptable medical sources. 20 C.F.R. §§404.1513(a) & (d)(1), 404.1527(f); *see Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed.Appx. 358, 363 (6th Cir. 2001) ("[A] physical therapist is not recognized as an acceptable medical source."). With regard to opinions from non-acceptable medical sources, the regulations broadly state:

> The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

20 C.F.R. § 404.1527(f)(2). Plaintiff correctly points out that the ALJ did not expressly discuss the April 3, 2007 functional capacity evaluation. ECF Dkt. #13 at 17. However, this regulation does not necessarily require the ALJ to expressly explain the weight, let alone the reasoning, given to a non-acceptable medical source, unless that source is given greater weight than that of a treating source. *See generally Marine v. Barnhart*, No. 00 CV 9392 (GBD), 2003 WL 22434094, at *2-3 (S.D.N.Y. Oct. 24, 2003) (ALJ did not fail to consider certain expert medical evidence by non-examining state physician that claimant could only stand or walk for 2 hours in 8-hour workday, even though the ALJ's decision made no specific mention of it). By omission as well as by relying on the State agency

consultants, the ALJ presumptively gave no weight to the April 2007 evaluation. It also appears that Ms. Allen-Fadzl only evaluated Plaintiff once, and Plaintiff has not argued that she was a treating source. *See* tr. at 351; ECF Dkt. #13 at 17. As previously mentioned, the ALJ gave a comprehensive review of the medical evidence in his RFC determination, which this Court finds sufficient to allow Plaintiff or a subsequent reviewer to follow the ALJ's reasoning. Even if this were to be considered error, the Court also finds that in such a case, any error would be harmless.

The Sixth Circuit has stated that even if there is a violation of the procedural requirements of 20 C.F.R. § 404.1527(c)(2), such a violation may constitute harmless error. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (§ 1527(d)(2) was a prior version of § 404.1527(c)(2)); *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647 (6th Cir. 2009) (decisions of administrative agencies are generally reviewed for harmless error). The *Wilson* court listed several examples of when harmless error may occur in the context of treating physicians, including: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of [§ 404.1527(c)(2)]–the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* Regarding the third example, "the ALJ could have met the goal of providing good reasons" by indirectly attacking either the "supportability" or the "consistency" of the doctor's opinion with the record as a whole by either the ALJ's analysis of the doctor's other opinions or his analysis of the claimant's ailments in general. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462, 470 (6th Cir. 2006) (quoting *Hall v. Comm'r of Soc. Sec.*, 148 Fed.Appx. 456, 464 (6th Cir. 2005); *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). Because the regulations generally give more deference to treating physicians, these examples under the harmless error rule can also be applied in the context of non-treating sources.

The April 2007 report is patently deficient because it contains some internal inconsistencies and no recommendation. *See* tr. at 352. It states that Plaintiff demonstrates the ability to perform some work-related activities. *Id.* The report further states Plaintiff would not likely tolerate 2 hours in a work environment. *Id.* Despite these statements, Ms. Allen-Fadzl expressly declines to give a recommendation with regard to "[s]pecific return to work allowances" and defers that assessment to Plaintiff's treating therapist. *Id.* Additionally, Plaintiff has also failed to explain how it has been prejudiced by the ALJ's failure to discuss this physical therapy report. *See generally Rabbers*, 582 F.3d at 654-55 (refusing to remand even if agency failed to adhere to its own procedures, "unless the claimant has been prejudiced on the merits or deprived of substantial rights"). Therefore, the Court finds that despite the omission of the April 2007 functional capacity evaluation from the ALJ's decision, the ALJ had substantial evidence in his RFC determination and any error would be harmless.

Finally, Plaintiff contends that the ALJ unreasonably determined that evidence and opinions subsequent to Plaintiff's date last insured, December 31, 2007, were not entitled to any weight. ECF Dkt. #13 at 17 -18; *see* tr. at 22. Plaintiff asserts that the ALJ should have considered such evidence because it sheds light on her condition prior to her date last insured. ECF Dkt. #13 at 17. Plaintiff specifically points to an independent medical evaluation on March 4, 2008 by Dr. Larson. *Id.* in declining to give any weight to evidence and opinions after the date last insured, the ALJ reasoned that, "[a]lthough the claimant established severe impairments that impose limitations on her ability to perform basic work activity, she did not establish disability on or before December 31, 2007, her date last insured in order to be entitled to a period of disability and disability insurance benefits." Tr. at 22.

The Sixth circuit has held that "[e]vidence of disability after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004); *Swain v. Comm'r of Soc. Sec.*, 379 Fed.Appx. 512, 517 (6th Cir. 2010) ("[A] treating

physician's opinion is 'minimally probative' when the physician began treatment after the expiration of the claimant's insured status.") (quoting *Siterlet v. Sec. of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). However, evidence that post-dates a claimant's insured status is relevant if it sheds light on a claimant's condition prior to the date last insured. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time."). Evidence post dating the date last insured may be relevant evidence to support an inference of an earlier onset date of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121-22 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 245, 247 (6th Cir. 1984).

In the instant case, Dr. Larson only saw Plaintiff once for the purpose of the independent evaluation with no established doctor-patient relationship, and with the understanding that it would be sent to the Ohio Bureau of Workers' Compensation. Tr. at 1094. This evaluation was conducted less than 3 months after the date last insured. *See* tr. at 14, 1094. Plaintiff argued that this evaluation was relevant to shed light on her complaints of disabling pain because Dr. Larson noted (1) that Plaintiff appeared uncomfortable during position changes and prolonged sitting; and (2) Plaintiff's spine was not at maximum medical improvement and opined that she would benefit from placement of a dorsal column stimulator. ECF Dkt. #13 at 17-18 (citing Tr. at 1096).

The ALJ should have considered Dr. Larson's report because it is close enough in time to the date last insured and it does relate back to her complaints of pain before the date last insured. However, the Court finds this error harmless. As previously discussed, the ALJ did discuss in depth Plaintiff's medical history, including evidence regarding her complaints of pain. The ALJ addressed Plaintiff's testimony about her condition and her testimony that her pain is excruciating. Tr. at 17. He even acknowledged that "[w]hile she struggled at times with pain, she retained the ability to ambulate,

-20-

sit and stand within the parameters" of his RFC determination. *Id.* The ALJ cited to her complaints of pain on multiple visits, but also considered her objective medical records showing, for example, that she was able to ambulate, she had 5/5 strength in her legs, and she had negative straight leg raises. *See* tr. at 17-21. Even if the ALJ considered Dr. Larson's March 2008 evaluation, the Plaintiff has not shown how it would have tipped the scale in her favor. The ALJ cited extensively to enough evidence in the record for this Court to find his determination met the substantial evidence standard.

For the above reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's symptoms and resulting limitations, and in evaluating her RFC. The Court further finds that the ALJ set forth sufficient reasons for the determinations that he made and substantial evidence supports those determinations.

## VI. **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES the instant case in its entirety with prejudice.


Date: August 27, 2019                                */s/ George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE